**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

VICENTE ALVAREZ-HERNANDEZ,
            *Defendant-Appellant.*

No. 06-10284

D.C. No.
CR-05-00223-LRH

OPINION

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Submitted October 20, 2006*
San Francisco, California

Filed February 28, 2007

Before: Andrew J. Kleinfeld and Jay S. Bybee,
Circuit Judges, and Robert H. Whaley,** District Judge.

Opinion by Judge Bybee

*This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Robert H. Whaley, United States District Judge for the Eastern District of Washington, sitting by designation.

## COUNSEL

Michael K. Powell, Assistant Federal Public Defender, Reno, Nevada, for the defendant-appellant.

Ronald C. Ranchow, Assistant United States Attorney, Reno, Nevada, for the plaintiff-appellee.

---

**OPINION**

BYBEE, Circuit Judge:

Defendant-Appellant Vicente Alvarez-Hernandez ("Appellant") appeals his sentence for being an illegal alien found in the United States following deportation. Appellant argues that the district court's determination that he had previously been "convicted for a felony drug trafficking offense for which the sentence imposed was 13 months or less," U.S.S.G. § 2L1.2(b)(1)(B), was erroneous due to a 2003 amendment to the Sentencing Guidelines' authoritative commentary. That amendment's effect is a question of first impression in this circuit. For the reasons set forth below, we hold that the district court erred in applying § 2L1.2(b)(1)(B) to Appellant.

## I.   FACTS AND PROCEEDINGS BELOW

Appellant is a Mexican national. In 1991, Appellant received a five-year suspended sentence, three years probation, and a fine, for the unlawful sale of a controlled substance in violation of Nevada Revised Statute § 453.321. Following that conviction, Appellant was deported. Appellant later returned to the United States and was deported again on May 20, 1999. Appellant again reentered the United States, and on November 16, 2005, he was indicted pursuant to 8 U.S.C. § 1326 for being an illegal alien found in the United States following deportation. Appellant pled guilty to that charge on February 9, 2006.

On April 21, 2006, the district court conducted a sentencing hearing at which Appellant and the United States agreed that, under the Sentencing Guidelines, Appellant's base offense

level was eight and that he was entitled to a three-level downward departure for acceptance of responsibility. The parties disagreed, however, over whether Appellant's fully suspended and probated sentence for unlawful sale of a controlled substance constituted "a felony drug trafficking offense for which the sentence imposed was 13 months or less" triggering U.S.S.G. § 2L1.2(b)(1)(B)'s twelve-level enhancement provision. Appellant argued, as he does now, that a fully suspended and probated sentence does not qualify as a "sentence imposed" under § 2L1.2(b)(1)(B).

The district court found Appellant's argument unconvincing. Instead, the district court reasoned that under § 2L1.2(b)(1)(B)'s plain text, any felony drug trafficking sentence of 13 months or less—even if fully suspended and probated—required a twelve-level sentencing enhancement. Consequently, as Appellant did not dispute that his 1991 Nevada state conviction constituted a felony drug trafficking offense, the district court found Appellant eligible for the twelve-level enhancement. Announcing that the Sentencing Guidelines provided the appropriate sentencing range, the district court then applied that enhancement and sentenced Appellant to twenty-four months of imprisonment. Appellant now appeals on an expedited basis.

## II.   DISCUSSION

Both the United States and Appellant agree that Appellant's conviction under 8 U.S.C. § 1326 qualifies for an enhancement under U.S.S.G. § 2L1.2(b)(1). That section instructs the sentencing court as follows:

> Apply the Greatest:
>
> If the defendant previously was deported, or unlawfully remained in the United States, after—
>
>> (A) a conviction for a felony that is (i) a drug trafficking offense for which the *sen-*

*tence imposed* exceeded 13 months . . . increase by 16 levels;

(B) a conviction for a felony drug trafficking offense for which the *sentence imposed* was 13 months or less, increase by 12 levels;

(C) a conviction for an aggravated felony, increase by 8 levels;

(D) a conviction for any other felony, increase by 4 levels; or

(E) three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by 4 levels.

U.S.S.G. § 2L1.2(b)(1) (emphasis added). The district court sentenced Appellant pursuant to § 2L1.2(b)(1)(B). Appellant concedes that his 1991 conviction constituted a felony drug trafficking offense, but he argues that he does not fall under § 2L1.2(b)(1)(B) because his sentence for that previous conviction was *fully* suspended and probated and, therefore, did not constitute a "sentence imposed." Instead, Appellant maintains that he should have been sentenced pursuant to § 2L1.2(b)(1)(C), which does not have a similar "sentence imposed" requirement.

Our task is two-fold. First, we must determine whether Appellant's 1991 conviction constitutes a "sentence imposed" under § 2L1.2(b)(1)(B). If it does, we must proceed to review the reasonableness of Appellant's sentence. *See United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006). If it does not and "we determine that [Appellant's] sentence resulted from an incorrect application of the Sentencing Guidelines," we must decide whether "the error in application was . . . harm-

less." *Id.* With that in mind, we turn to Appellant's argument that the district court misapplied the Guidelines.

As before *United States v. Booker*, 543 U.S. 220 (2005), we "review 'the district court's interpretation of the Sentencing Guidelines de novo, the district court's application of the Sentencing Guidelines to the facts of [a] case for abuse of discretion, and the district court's factual findings for clear error.' " *Cantrell*, 433 F.3d at 1279 (quoting *United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005)); *accord United States v. Mix*, 457 F.3d 906, 911 (9th Cir. 2006). Furthermore, as before *Booker*, "[c]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *United States v. Thornton*, 444 F.3d 1163, 1165 n.3 (9th Cir. 2006); *accord United States v. Asberry*, 394 F.3d 712, 716 n.5 (9th Cir. 2005) (utilizing the same test pre-*Booker*, 543 U.S. 220); *United States v. Wright*, 373 F.3d 935, 942 (9th Cir. 2004).

**[1]** Before November 2003, § 2L1.2(b)(1)'s commentary provided that, "[i]f all or any part of a sentence of imprisonment was probated, suspended, deferred, or stayed, 'sentence imposed' refers only to the portion that was not probated, suspended, deferred, or stayed." U.S. SENTENCING GUIDELINES MANUAL § 2L1.2 cmt. n.1(A)(iv) (2002). In 2003, however, the Sentencing Commission amended § 2L1.2(b)(1)'s commentary "by clarifying the meaning of some of the terms used in [that section]." U.S. SENTENCING GUIDELINES MANUAL app. C, vol. 2, p. 401 (2003). The revised commentary now provides that the term " '[s]entence imposed' has the meaning given the term 'sentence of imprisonment' in Application Note 2 and subsection (b) of § 4A1.2." U.S. SENTENCING GUIDELINES MANUAL § 2L1.2 cmt. n.1(B)(vii) (2004). Section 4A1.2(b) in turn provides that "[t]he term 'sentence of imprisonment' means a sentence of incarceration and refers to the maximum sentence imposed" and that "[i]f part of a sentence of imprisonment was suspended, 'sentence of imprisonment'

*refers only to the portion that was not suspended.*" U.S.S.G. § 4A1.2(b) (emphasis added). Application Note 2 adds, however, that "[t]o qualify as a sentence of imprisonment, the defendant *must have actually served a period of imprisonment* on such sentence." U.S. SENTENCING GUIDELINES MANUAL § 4A1.2 cmt. n.2 (2004) (emphasis added).

Before the 2003 amendment, we noted in dicta that, "[a] sentence of probation, with or without the two months' incarceration, by definition is a sentence of 13 months or less" under § 2L1.2(b)(1)(B), and therefore, even if a defendant received "zero months" of actual imprisonment, his or her sentence still triggered § 2L1.2(b)(1)(B)'s twelve-level enhancement. *United States v. Hernandez-Valdovinos*, 352 F.3d 1243, 1249 (9th Cir. 2003).[1] Our sister circuits reached similar conclusions. *See, e.g.*, *United States v. Garcia-Rodriguez*, 415 F.3d 452, 455-56 (5th Cir. 2005) (construing the pre-2003 commentary and affirming a district court's application of § 2L1.2(b)(1)(B) to a defendant who received probation and served no jail time); *United States v. Mullings*, 330 F.3d 123, 125 (2d Cir. 2003) (per curiam) ("hold[ing] that a non-custodial sentence requiring the appellant to pay only a monetary fine constitutes 'a conviction . . . for which the sentence imposed was 13 months or less' pursuant to U.S.S.G. § 2L1.2(b)(1)(B)").

In fact, before the commentary was amended, at least one district court rejected precisely the same argument that Appellant now advances. *See United States v. Cordero*, 256 F. Supp. 2d 1378 (N.D. Ga. 2003). In that case, the defendant argued that because he was given probation for a prior drug trafficking offense and served no actual time, he did not qual-

---

[1]The fact that *Hernandez-Valdovinos* involved a probationary and not a suspended sentence is not grounds for distinguishing the case because the pre-2003 commentary treated probated and suspended sentences in the same manner. *See, e.g.*, U.S. SENTENCING GUIDELINES MANUAL § 2L1.2 cmt. n.1(B)(iv) (2002).

ify for a twelve-level sentencing enhancement. *Id.* at 1380-81.[2] The district court, however, held that the pre-2003 commentary merely "subtracted out the . . . part of the sentence that was probated, such that the sentence imposed would" be zero months when a sentence was fully probated or suspended. *Id.* at 1381 (internal quotation marks omitted). As § 2L1.2(b)(1)'s text indicates that all drug trafficking offences trigger a twelve or sixteen-level enhancement and "[z]ero is clearly a number less than 13," the court held that the twelve-level enhancement applied to the defendant. *Id.* (internal quotation marks omitted).

**[2]** In contrast to that case, we have interpreted § 4A1.2 and its commentary defining a "sentence of imprisonment"— which the post-2003 commentary states defines the term "sentence imposed"—as requiring that "a defendant must have actually served some time in custody for his sentence to qualify as a sentence of imprisonment." *United States v. Mendoza-Morales*, 347 F.3d 772, 775 (9th Cir. 2003) (internal quotation marks omitted); *see also United States v. Schomburg*, 929 F.2d 505, 507 (9th Cir. 1991). Other circuits have reached similar conclusions. *See, e.g.*, *United States v. Murphy*, 241 F.3d 447, 459-60 (6th Cir. 2001) (noting that a fully suspended sentence does not qualify as a sentence of imprisonment); *United States v. Buter*, 229 F.3d 1077, 1078-79 (11th

---

[2]*Cordero*'s facts indicate that the defendant "was discovered by the INS . . . while sitting in jail awaiting probation revocation proceedings connected with either the drug trafficking conviction or another prior conviction." 256 F. Supp. 2d at 1380. The district court appears to have proceeded on the assumption that the pending revocation concerned the non-drug trafficking offense, because revocation and sentencing for the drug trafficking offense would have automatically triggered § 2L1.2(b)(1)(B)'s enhancement provisions. *See id.*; *see also United States v. Moreno-Cisneros*, 319 F.3d 456, 458 (9th Cir. 2003) ("We are persuaded that the prison sentence imposed after revocation of probation should be included in calculating the length of the sentence imposed for the prior offense."); U.S. SENTENCING GUIDELINES MANUAL app. C, vol. 2, p. 402 (2003) (commentary to Amendment 658).

Cir. 2000) (holding that a probationary sentence did not constitute a sentence of imprisonment and noting that a suspended sentence does not qualify as a sentence of imprisonment); *United States v. Staples*, 202 F.3d 992, 997-98 (7th Cir. 2000) (noting a sentence for time served, unlike a totally suspended sentence, qualifies as a sentence of imprisonment); *United States v. Brown*, 54 F.3d 234, 240 (5th Cir. 1995) (requiring "some time actually be served on [a] sentence before" that sentence may constitute a sentence of imprisonment); *United States v. Thompson*, 925 F.2d 234, 235 (8th Cir. 1991) (holding "a suspended imposition of sentence does not count as a 'sentence of imprisonment' for purposes of determining criminal history points"); *United States v. McCrary*, 887 F.2d 485, 489 (4th Cir. 1989) (per curiam) (holding a fully suspended sentence does not qualify as a sentence of imprisonment), *overruled on other grounds by*, *United States v. Underwood*, 970 F.2d 1336 (4th Cir. 1992).

Under the rules of statutory construction, we presume that Congress acts "with awareness of relevant judicial decisions." *United States v. Male Juvenile*, 280 F.3d 1008, 1016 (9th Cir. 2002); *accord United States v. Hunter*, 101 F.3d 82, 85 (9th Cir. 1996) ("[A]s a matter of statutory construction, we 'presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts.' " (quoting *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988)). We also "presume that when Congress amends a statute, it is knowledgeable about judicial decisions interpreting the prior legislation," *Porter v. Bd. of Trs. of Manhattan Beach Unified Sch. Dist.*, 307 F.3d 1064, 1072 (9th Cir. 2002), and "when 'judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well.' " *Merrill Lynch v. Dabit*, 126 S.Ct. 1503, 1513 (2006) (quoting *Bragdon v. Abbott*, 524 U.S. 624, 645 (1998)); *accord Lorillard v. Pons*, 434 U.S. 575, 581 (1978) ("[W]here, as here, Congress adopts a new law incorporating sections of a prior law, Congress nor-

mally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute."); *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1189 (9th Cir. 2003) (holding that "Congress is presumed to know the law and to have incorporated judicial interpretations when adopting a preexisting remedial scheme"); *see also Cannon v. Univ. of Chicago*, 441 U.S. 677, 696-98 (1979) (holding that in interpreting a newly enacted statute using the same words as an existing statute, Congress is presumed to have intended the same construction to apply to the new statute as applied to the existing statute).

**[3]** Because we "appl[y] the rules of statutory construction when interpreting the guidelines," *United States v. Gonzalez*, 262 F.3d 867, 869 (9th Cir. 2001) (per curiam), consistent with those principles, we presume that the Sentencing Commission—like Congress—acts with an awareness of the relevant case law in amending the Guidelines and their commentary. We must, therefore, presume that in amending § 2L1.2(b)(1)'s commentary, the Sentencing Commission was aware of our—and our sister circuits'—holding that to qualify as a "sentence of imprisonment" under § 4A1.2, actual jail time is required. Consequently, in accordance with the rules of statutory construction, when the Sentencing Commission amended the commentary to define "sentence imposed" in the same manner as "sentence of imprisonment," it did so with the knowledge—and intention—that we would require actual imprisonment for a previous conviction to trigger § 2L1.2(b)(1)(B). The district court's determination to the contrary was, therefore, erroneous.

Attempting to avoid that conclusion, the United States argues that we should construe the 2003 amendment consistent with § 2L1.2(b)(1)'s plain text and legislative history. For instance, citing our opinion in *United States v. Garcia-Gomez*, 380 F.3d 1167 (9th Cir. 2004), the United States asserts that under § 2L1.2(b)(1)'s plain text, all felony drug trafficking felony convictions must fall under either § 2L1.2(b)(1)(A) or

§ 2L1.2(b)(1)(B). Though the government is correct that § 2L1.2(b)(1) references felony drug trafficking "convictions" exclusively in those sections, this argument is ultimately unpersuasive because it entirely neglects the second half of those sections, which require the existence of a "*sentence imposed*." It does no violence to the text to conclude that to fall under § 2L1.2(b)(1)(B), actual imprisonment is required. Indeed, in as much as the commentary, which we must accept as authoritative, directs us to construe "sentence imposed" as having the same meaning as "sentence of imprisonment in § 4A1.2, any plain reading of § 2L.1.2(b)(1) must consider § 4A1.2 as well, and that section unambiguously states that " 'sentence of imprisonment' refers only to the portion [of the sentence] that was not suspended."

In support of its position, the United States also posits that nothing in the 2003 amendment's legislative history indicates that the Sentencing Commission intended to overrule the view that any felony drug trafficking sentence for 13 months or less triggers § 2L1.2(b)(1)(B) and that we should abide by that finding. Indeed, the government points out that the 2003 amendment was intended only to clarify that "[t]he length of the sentence of imprisonment includes any term of imprisonment given upon revocation of probation, parole, or supervised release." U.S. SENTENCING GUIDELINES MANUAL app. C, vol. 2, p. 402 (2003). Moreover, the United States directs us to § 2L1.2(b)(1)'s official 2001 enactment history, which states that:

> [T]he 16-level enhancement is warranted if the defendant previously was deported, or unlawfully remained in the United States, after a conviction for certain serious offenses, specifically, a drug trafficking offense for which the sentence imposed exceeded 13 months, a felony that is a crime of violence, a felony that is a firearms offense, a felony that is a national security or terrorism offense, a felony that is a human trafficking offense, and a felony

that is an alien smuggling offense committed for profit. *Other felony drug trafficking offenses will receive a 12-level enhancement.* All other aggravated felony offenses will receive an 8-level enhancement.

U.S. SENTENCING COMMISSION GUIDELINES MANUAL SUPPLEMENT to Appendix C, Amendment 632, at 218 (emphasis added). According to the United States, the quoted language unequivocally indicates that in enacting § 2L1.2(b)(1), the Sentencing Commission intended that all previous felony drug trafficking convictions would trigger a sixteen or twelve-level enhancement.

We reject the United States' argument that we should construe the 2003 Amendment consistently with its legislative history, however, because it asks us to ignore what the commentary *actually says* in favor of what the Sentencing Commission *might have been thinking*. Moreover, we find the United States' argument based on the 2001 enactment history wholly unpersuasive because it essentially asks us to ignore what the Sentencing Commission actually adopted in 2003—namely, an amendment defining "sentence imposed" in the same manner as the term "sentence of imprisonment" in § 4A1.2—in favor of legislative history *circa* 2001. Even aside from that conflict, however, we would still be compelled to reject the United States' argument because it violates the bedrock principle that when a legislative body "alters the wording of a statute," it is presumed to have "intended a change in the law." *Hiivala v. Wood*, 195 F.3d 1098, 1103 (9th Cir. 1999); *see also United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985) ("[W]e must presume that [a legislative body] acts with deliberation, rather than by inadvertence, when it drafts [enactments].")

**[4]** Finally, as Appellant's sentence "resulted from an incorrect application of the Sentencing Guidelines," we must determine whether that "error in application was . . . harm-

less." *Cantrell*, 433 F.3d at 1279. In imposing Appellant's sentence, the district court stated that the Guidelines provided the appropriate sentence and announced its intention to abide by them. Because the district court erred in interpreting § 2L1.2(b)(1), however, it did not abide by the Guidelines, and we do not know if the district court might have departed from the Guidelines if it had known that Appellant did not qualify for § 2L1.2(b)(1)(B)'s twelve-level enhancement. Furthermore, even if the district court would not have departed under our interpretation of § 2L1.2(b)(1), the district court's interpretation was still not harmless because the sentence imposed by the district court—twenty-four months— exceeded the high end of the correct Guidelines range. *See* U.S. SENTENCING GUIDELINES MANUAL, app. Sentencing Table. Accordingly, we hold that the error was not harmless.

### III.   CONCLUSION

**[5]** Appellant's sentence was based on a misapplication of the Guidelines, and that misapplication was not harmless. We, therefore, vacate Appellant's sentence and remand for sentencing.

**REVERSED AND REMANDED**.